In re Jerry H. SMITH, Lola P. Smith, Debtors.

In re ARCHITECTURAL DESIGN, INC., Debtor.

Bankruptcy Nos. 7–82–00996, 7–82–01022.

United States Bankruptcy Court, W.D. Virginia, Abingdon Division.

Nov. 25, 1985.

Copeland, Molinary & Bieger, Abingdon, Va., for debtors.

U.S. Atty. for W.D. Va., Roanoke, Va., for I.R.S.

## JOINT MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue in these cases is the appropriate rate of interest to be used to reflect present value on payments for priority unsecured tax claims of 11 U.S.C. § 507(a)(6)[1] which are deferred under 11 U.S.C. § 1129(a)(9)(C).

The undisputed facts are as follows. Debtors, Jerry and Lola Smith, filed their Chapter 11 petition on August 6, 1982. Architectural Design, Inc. filed its Chapter 11 petition on August 13, 1982. On May 17, 1985, Disclosure Statements and Plans were filed for each Debtor. The Internal Revenue Service (IRS) has priority tax claims in each case. With respect to the Smiths' Plan, the IRS objected to the proposed payment of interest at the federal judgment rate of 28 U.S.C. § 1961. The IRS objected to the failure of the Architectural Design Plan to provide for payment of interest on the tax claims. A confirmation hearing was held on August 21, 1985 in both cases, and the matters were taken under advisement until October 15, 1985 for Counsel to file briefs on the appropriate rate of interest. On October 15, 1985, the date set for further hearing, the IRS was given leave to submit a response brief to the Debtors' brief, and Counsel agreed to submit the cases to the Court without oral argument.

---

1. Section 507 of the Bankruptcy Code was amended by Section 350(c) of the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353. Up to that time, § 507(a)(6) was the relevant provision dealing with allowed unsecured claims of governmental units for taxes. The Bankruptcy Amendments and Judgeship Act added a new priority claim to § 507, as subsection (a)(5), thereby changing the former provision § 507(a)(6) to § 507(a)(7).

The reference to § 507(a)(6) in § 1129(a)(9)(C) was not renumbered appropriately to reflect this amendment. However, the claims intended to be addressed by § 1129(a)(9)(C) are those relating to tax claims, presently outlined in § 507(a)(7). For the sake of consistency, references to priority tax claims in this Opinion will refer to § 507(a)(6) as it read before the 1984 amendment.

Simply stated, the IRS contends that the appropriate rate of interest on priority tax claims deferred under § 1129(a)(9)(C) is the Internal Revenue Service rate provided in 26 U.S.C. § 6621. It asserts that the rate of interest used should be tailored to the type of claim before the Court. As a tax claim in these cases, the § 6621 rate should apply. Counsel for the Debtors contends that the federal judgment rate is the more appropriate rate of interest in reorganization.

Section 1129(a) of the Bankruptcy Code authorizes confirmation of a plan of reorganization if all of the requirements of the listed subsections are met. The provision relevant to these cases is § 1129(a)(9)(C), which provides that the court may confirm a Plan where:

"Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that .... ...

(c) With respect to a claim of a kind specified in Section 507(a)(6) of this title, *the holder of such claim will receive* on account of such claim *deferred cash payments*, over a period not exceeding six years after the date of assessment of such claim, *of a value*, as of the effective date of the plan, *equal to the allowed amount of such claim.*" (emphasis added)

Section 1129(a)(9)(C) represents a change in the law governing the payment of priority taxes. Under the Bankruptcy Act, in Chapter X and XI cases, the debtor was required, before confirmation of a Plan, to deposit the money necessary to pay all priority debts and costs of administration unless the claimants waived such a deposit or consented to provisions of the Plan otherwise dealing with their claims. 5 *Collier on Bankruptcy*, ¶ 1129.02[9] at 1129–30 (15th ed. 1985). *See also* 6 *Collier on Bankruptcy* (Part 2), ¶ 9.08 at 1586 (14th ed. 1978). Under the *Bankruptcy Reform Act of 1978*, as amended, the taxes having priority under § 507(a)(1) and § 507(a)(2) must be paid in full upon confirmation and may not be deferred. *See* § 1129(a)(9)(A);

however, § 1129(a)(9)(C) permits the debtor to pay taxes having priority under § 507(a)(6) by deferred payments. As a condition to this deferral in payment, § 1129(a)(9)(C) requires that the holder of the priority tax claim will receive "value as of the effective date of the Plan, equal to the allowed amount of such claim."

The phrase "value, as of the effective date of the Plan" appears in several Bankruptcy Code provisions in addition to § 1129(a)(9). *See* § 1129(b)(2)(A)(i)(II); § 1325(a)(4); § 1325(a)(5)(B)(ii); § 1325(b)(2). The legislative history suggests that the phrase is to receive a consistent interpretation, *i.e.*, a creditor receiving deferred payments is to receive the present value of the amount of the claim.

The explanatory statements of Senator DeConcini and Representative Edwards to § 1129(a)(9)(C) reveal that "tax claims entitled to priority under § 507(a)(6) ... may be required to take deferred cash payments over a period not to exceed six years after the date of assessment of the tax with the *present value* equal to the amount of the claim." (emphasis added) H.R. No. 95–595, 95th Cong., 1st Sess. 408 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6364. Likewise, the legislative history to § 1124 suggests that the phrase as used in that section and other Bankruptcy provisions "indicates that *the promised payment* under the Plan *must be discounted to present value.*" (emphasis added) H.R. Rep. No. 95–595, U.S.Code Cong. & Admin. News 1978, p. 6464 as appearing in 2 Appendix *Collier on Bankruptcy* at 408. *See also* H.R.Rep. No. 95–595, *supra*, legislative history to § 1129 which in discussion of cram-down provisions under subsection (b) suggests that the phrase "contemplates a present value analysis that will discount value to be received in the future." 2 Appendix *Collier on Bankruptcy* at 414.

Although Congress indicated that a present value analysis is to be used, it did not outline the interest rate to be employed.

The Bankruptcy Courts and District Courts have used a variety of formulas in

making present value determinations under Chapter 11 and Chapter 13. *See Matter of Southern States Motor Inns, Inc.,* 709 F.2d 647, 651 (11th Cir.1983), and *Matter of Fi-Hi Pizza, Inc.,* 40 B.R. 258, 267 (Bankr. D.MA 1984), and the cases cited therein. *See also In re Mitchell,* 39 B.R. 696, 701 (Bankr.D.OR 1984).

In discussing the concept of present value, *Collier* suggests the appropriate rate to be used. The concept of present value ...

"... may be expressed by a corollary proposition: a dollar in hand today is worth exactly the same as (i) a dollar to be received a day, a month, or a year hence plus (ii) the rate of interest which the dollar would earn if invested at an appropriate interest rate ...

"The concept of 'present value' does not define, and thus the courts must determine, based on the facts of a given case, the appropriate 'market rate' which will serve as the measuring standard by which the court can determine whether deferred payments under the terms of the Plan have a value as of the effective date of the Plan equal to the allowed claim.

"It is submitted that deferred payments of an obligation under a Plan is a coerced loan and the rate of return with respect to such loan must correspond to the rate which would be charged or obtained by the creditor making a loan to a third party with similar terms, duration, collateral, and risk. It is therefore submitted that the appropriate discount rate must be determined by reference to the 'market' interest rate."
5 *Collier on Bankruptcy,* ¶ 1129.03[i] at 1129–62–3 (15th ed. 1985).

In determining the appropriate rate of interest to be applied in calculating present value of deferred payments, an essential factor in the determination is reference to the market or the nature of the particular claim involved.

Several Circuit Courts of Appeal have addressed the rate of interest to be applied to secured claims. In *Memphis Bank and Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982), the Sixth Circuit adopted the market rate approach with respect to a secured claim in a Chapter 13 case. The court concluded that the Bankruptcy Court should apply the current market rate of interest used for similar loans in the region. In *In re Monnier Brothers,* 755 F.2d 1336 (8th Cir.1985), the Eighth Circuit held that interest should be paid to an over-secured creditor under a Chapter 11 Plan at the rate established by the loan contract. The court concluded that such a rate more accurately reflected the prevailing market cost of money than the Treasury Bill rate adopted by the Bankruptcy Court. Finally, in *Grundy National Bank v. Tandem Mining Co.,* 754 F.2d 1436 (4th Cir.1985), the Fourth Circuit has concluded that a secured creditor was entitled to interest on periodic payments by the debtor until the Plan was confirmed, dismissed, or the stay lifted, computed at the market rate on liquidation value of the collateral. *See also In re Virginia Foundry Co., Inc.,* 9 B.R. 493 (W.D.VA 1981), in which the District Court for the Western District of Virginia held that a Plan should provide for interest at a current or market rate the secured creditor could reasonably expect to obtain from investment of the funds. To deprive the creditor of such would be to deprive him of value.

However, only two Circuits have expressly addressed the issue before this Court on the rate of interest to be applied to priority tax claims under § 1129(a)(9)(C). In *Matter of Burgess Wholesale Manufacturing Opticians, Inc.,* 721 F.2d 1146 (7th Cir. 1983), the Seventh Circuit ruled that interest was appropriate in the case of deferred payments under § 1129(a)(9)(C), but expressly declined to determine the appropriate discount or interest rate applicable to the case.

In *Matter of Southern States Motor Inns, Inc.,* 709 F.2d 647 (11th Cir.1983), the Eleventh Circuit reviewed the decision of the Bankruptcy Court, affirmed by the District Court, which had approved a rate as that established by 26 U.S.C. § 6621, less

1% for "rehabilitation aspects" of the Plan. The court, in effect, approved the § 6621 rate and held that the interest rate to be used in computation should not be subject to any reduction for the "rehabilitation aspects" of the Plan. *Id.* at 653. The interest rate ultimately applied in *Southern States* was an amount provided in § 6621. Despite dicta in the Opinion to the contrary, in finding that the lower courts had erred in allowing any reduction from the § 6621 rate, the Eleventh Circuit impliedly found that rate as evidence of the appropriate market rate of interest. *See In re Connecticut Aerosols, Inc.*, 31 B.R. 883, 886 (Bankr.D.CT 1983); *Matter of Fi-Hi Pizza, Inc., supra*, 40 B.R. at 264.

Several Bankruptcy Courts which have considered this question have rejected the § 6621 rate of interest. *In re Bay Area Services*, 26 B.R. 811 (Bankr.M.D.FL 1982); *In re Moore*, 25 B.R. 131 (Bankr.N.D.TX 1982); *In re Tacoma Recycling*, 23 B.R. 547 (Bankr.W.D.WA 1982); *In re Fisher*, 29 B.R. 542 (Bankr.D.KS 1983). Other Bankruptcy Courts have accepted the § 6621 rate as the appropriate measurement. *In re Hathaway Coffee House*, 24 B.R. 534 (Bankr.S.D.OH 1982); *In re Crotty*, 11 B.R. 507 (Bankr.N.D.TX 1981); *In re Ziegler*, 6 B.R. 3 (Bankr.S.D.OH 1980); *In re Busman*, 5 B.R. 332 (Bankr.E.D.NY 1980).

■ Upon careful consideration, we find the reasoning of the latter line of cases more persuasive. In determining the appropriate rate of interest to reflect present value for deferred payments, due consideration must be given to the market interest rate relevant to the particular claim before the Court. In the instant cases, the particular claims are tax liabilities. In 26 U.S.C. § 6621, the Congress sets forth the means for determining the rate of interest for tax claims. Section 6621 reflects the rate at which the federal government, although involuntarily, extends credit when a taxpayer fails to pay federal taxes. 11 U.S.C. § 1129 was established by enactment of the Bankruptcy Reform Act of 1978. Although

§ 1129(a)(9)(C) does not establish a definitive rate of interest with respect to deferred payments on tax claims, there is no indication that, by its enactment, Congress intended to repeal or modify the rate of interest to be applied to tax claims under § 6621. The courts will not presume that the legislature intended a repeal by implication. 73 *Am.Jur.*2d, Statutes § 397. The presumption is always against the intention to repeal where express terms are not used and where effect can reasonably be given to both statutes. *United States v. Burroughs*, 289 U.S. 159, 53 S.Ct. 574, 77 L.Ed. 1096 (1933).

■ Consequently, given that the claims before this Court are tax liabilities, we conclude that the appropriate rate of interest to reflect present value for their deferred payment under § 1129(a)(9)(C) is the interest rate established by 26 U.S.C. § 6621. Such rate will more accurately reflect the present value as of the effective date of the Plan and the cost to the IRS as a creditor of not receiving the full amount of its claim upon confirmation of the Debtors' Plans. The federal judgment rate provided for by 28 U.S.C. § 1961 and advocated by the Debtors has no relationship to interest obligations on federal tax liabilities. The purpose of § 1961 was to provide a rate of interest on money judgments rendered in federal courts from the date of entry of judgment. *Parisi v. Lady in Blue, Inc.*, 433 F.Supp. 681 (D.C.MA 1977). A federal judgment is different in kind and effect from the liability for taxes as provided in § 507 in bankruptcy cases. It is inappropriate to apply the rate of § 1961 to such tax obligations.

Accordingly, it is

ADJUDGED and ORDERED

that the appropriate rate of interest to reflect present value on priority unsecured tax claims whose payment is deferred under § 1129(a)(9)(C) is the Internal Revenue Service rate of interest established by 26 U.S.C. § 6621.

Service of a copy of this Joint Memorandum Opinion and Order shall be made by

mail to the respective Debtors; to COPE-LAND, MOLINARY & BIEGER, Counsel for Debtors; the United States Attorney for the Western District of Virginia; and to the members of the Creditors' Committees herein.