**In re Ira H. CASSELL, Shirley Jean Cassell, Debtors.**

**Bankruptcy No. 7–88–01881–BKC–HPA.**

United States Bankruptcy Court,
W.D. Virginia,
Abingdon Division.

Nov. 29, 1989.

John M. Lamie, Browning, Morefield, Lamie and Sharp, Abingdon, Va., for debtors.

James E. Green, White, Elliott & Bundy, Bristol, Va., for Dominion Bank, N.A.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Chief Judge.

The issue before this court is what interest rate an undersecured creditor is entitled to on the secured portion of the creditor's debt. Another way of stating this issue is what is the appropriate discount rate that a Chapter 13 plan must apply to the allowed amount of a secured claim being paid over time in accordance with the terms of the plan.

The essential facts are as follows: The secured creditor, Dominion Bank, N.A., ("Bank") has a security interest in Ira Hampton and Shirley Jean Cassell's ("debtors") 1985 Ford, F-150, four wheel drive, pickup truck. At the meeting of the creditors, the vehicle was valued at $6,400.00. This valuation of the collateral has been agreed to by Bank.

The debtors filed a Chapter 13 plan which provides that Bank shall receive $6,400.00, the allowed amount of its secured claim, in installments over a period of 36 months, with interest thereon at a rate of eleven and one-half percent per annum. The Bank objected to the plan because the said interest rate was below the market rate. Bank claimed that the plan's application of the eleven and one-half percent interest rate, as opposed to the market rate, resulted in the present value of property distributed under the plan on account of the claim to be less than the allowed amount of the claim.

This is a troublesome issue before this Court, and apparently other Courts administering Chapter 13 cases. The task of resolving each secured claim in the numerous cases filed annually in this Court, is an impossible undertaking.

█ The question of interest on Chapter 13 claims arises out of the requirement of Section 1325(a)(5)(B)(ii) that a court confirm a plan only if,

> with respect to each allowed secured claim provided for by the plan ... the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; ...

Bankruptcy Code Section 1325(a)(5)(B) allows a debtor to "cramdown" a plan repaying only the allowed secured claim, i.e., the amount of the debt to the extent it is

secured by the present value of the collateral. The creditor is assured that the plan will require the debtor to pay the value, as of the effective date of the plan, or property to be distributed. But, since that amount will not be paid immediately and the creditor is forced to receive installment payments under the cramdown provisions, interest should be assessed on the amount which the debtor will repay to compensate for use of the creditor's money.

The pivotal issue in this case is what interest the court must assess on the allowed secured claim for the present value of the vehicle in order to avoid dilution of the value of the claim during a delay in payment.

The Court has found a wilderness of rules courts have waded through to determine the proper interest rate in prior cases. *66 ALR Fed 537.* It has been said that the search for an appropriate interest rate in Chapter 13 cramdown cases is like the search for the Holy Grail. *In re Benford,* 14 B.R. 157 at 159 (Bankr.W.D.Ky.1981).

■ The Bank contends that it is entitled to interest which it might negotiate upon a new loan, however that is not the rule to be applied. The funds distributed to secured creditors, by Chapter 13 trustees in administering these plans, impacts upon all creditors. Excessive interest payments to secured creditors diminishes the amount of funds available for all other creditors.

■ The highly respected authority in this field is set forth in 5 *Colliers on Bankruptcy,* (15 edition) Section 1325.-06[B], which states:

Section 1325(a)(5)(B)(ii) requires the court to determine the value of the property to be distributed under the plan. In other words, the court must ascertain the then *present value* of the property *to be distributed.* In order to implement section 1325(a)(5)(B)(ii) the court must capitalize deferred payments by converting the deferred payments proposed to be distributed under the chapter 13 plan into an equivalent capital sum as of the effective date of the plan. Section 1325(a)(5)(B)(ii) cannot be faithfully implemented simply by comparing the sum total of all deferred payments proposed by the plan with the amount of the allowed secured claim. An appropriate discount factor must be arrived at by the court, so as to fairly discount value proposed to be given in the future on account of the allowed secured claim.

The simplest method of equating the present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the court or agreed upon by the parties. Accordingly, in addition to deferred principal payments aggregating the face amount of the allowed secured claim, a chapter 13 plan need only propose to pay interest on the face amount of the allowed secured claim at the appropriate discount rate over the course of the payment extension period.

The purpose of the present value requirement is to place the holder of an allowed secured claim in the same position economically as if the debtor exercised the option of surrendering the collateral. Through the payment of interest, the creditor is compensated for the delay in receiving the amount of the allowed secured claim, which would be received in full immediately upon confirmation if the collateral were liquidated. Since the creditor is deprived of these funds to the extent they are deferred through the plan, the creditor must obtain them elsewhere, for whatever purposes they were to be used. In view of this purpose, the appropriate discount rate is one which approximates the creditor's cost of funds in its business borrowings. If the holder of an allowed secured claim receives interest which compensates it in full for any additional interest costs incurred due to the deferral of payment, it is not harmed by that deferral.

Thus, contrary to the holdings of a number of courts, it is rarely appropriate to select the rate charged to the debtor in the original transaction as the present value discount rate. Treating the chap-

ter 13 deferral of payments like a new loan transaction, as those courts have done, provides the holder of the allowed secured claim with not only the cost of the funds it would lend but also the costs of a new loan transaction, which would not be incurred, and the profit that would be earned in that transaction. Neither of these latter two amounts would be received if the collateral were surrendered; the lender would have to incur new transaction costs to earn an additional profit. To include them in the present value discount rate would give the holder of an allowed secured claim more than the equivalent of immediate payment of that claim in full. Such a reading of the statute would also ignore the fact that, during the legislative process leading to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress specifically considered an amendment requiring the contract rate of interest to be paid and rejected it.

To determine the costs of funds to creditors, and thereby the discount rate to be applied under section 1325(a)(5)(B)(ii), courts have usually looked to commercial credit market rates prevailing at the time of confirmation. To make the process more simple and predictable, some have pegged their chapter 13 discount rates to the most recent rates for treasury bills, usually augmented by a small amount to compensate for the plan's risk of failure. This risk factor need not be large for several reasons. First, the creditor's main protection against risk comes from its right to seek adequate protection from the outset of the case, from its right to retain its lien, and from its right to seek dismissal of the case in the event of a material default in payments, which would restore the creditor's prebankruptcy remedies. Moreover, in consumer finance transactions in which annual percentage rates are relatively high, the primary factors determining those rates do not relate to risk, especially when the debt is secured, but to high costs of marketing, high transaction costs relative to the amount of the debt, and consumer's failure to effectively shop for lower rates due to various imperfections in the market.

The net effect of section 1325(a)(5)(B)(ii) is to accord allowed secured claims under a chapter 13 plan the identical treatment given to recourse creditors under section 1111(b)(1), except that the chapter 13 plan may propose distribution of other property as well as deferred cash payments. But the lien retained by virtue of section 1325(a)(5)(B)(i) only secures deferred payments under the plan to the extent of the allowed secured claim. Therefore, interest payments over and above deferred payments aggregating the full amount of the allowed secured claim are not secured by the lien retained by the holder under section 1325(a)(5)(B)(i). (Citations omitted).

The foregoing authority cites the well-reasoned opinion on the subject of *In re Fisher*, 29 B.R. 542 (Bankr.D.Kan.1983) wherein the court adopted the current Treasury Bill interest coupled with a one (1) percent risk factor. Although the *Fisher* court declined to allow Internal Revenue Service interest under 26 U.S.C. section 6621 as this court did in *In re Smith*, 58 B.R. 652 (Bankr.W.D.Va.1985), it set forth the proper rule for the discount interest rate on secured claims other than Internal Revenue Service claims which was in accord with *Collier, supra.* This Court in *Smith* held that Congress intended that I.R.S. claim's interest was fixed under 26 U.S.C. Section 6621.

In fixing a risk factor, it must be remembered that the risk factors to the Bank are somewhat diminished due to the administrative aspects of Chapter 13 cases since the trustee oversees the affairs of the debtor thereby reducing administrative and collection costs to Bank. *See In re Shannon*, 100 B.R. 913 (D.C.S.D.Ohio 1989) at page 939.

The Court here attempts to develop a scale in order to set some guidelines for Chapter 13 trustees, debtors, and creditors. Statutes and case law do not establish any specific guidelines and the Court finds this

scale as fixed herein to be fair and equitable to debtors and creditors alike. The practicability of the scale will help debtors and their attorneys to establish acceptable plans. The scale will help creditors reduce the cost of attorney fees and witness expense and allow them to receive the fair and equitable current rate of interest without delay. It will also aid trustees who handle many of these cases in a number of practical aspects.[1]

The scale retains the substance of the current cost of money, i.e., sustaining a varying and fluctuating rate depending on time and circumstances involved. Also, as mentioned above, this scale is the starting point in the resolution of the interest question and may be countered with rebuttal evidence in an appropriate case.

Upon hearing, Paul W. Holt, a senior vice-president with the Bank with twenty-five years of experience in consumer loans, many of which are and were vehicle loans, testified. He stated that the cost of funds is what it costs a lending institution to obtain money and that lending institutions use Treasury Bills as a guide in determining cost of funds.

A factor or consideration lending institutions use to determine the finance spread in the case of motor vehicles, is the year model or the useful life of the vehicle. Institutions use car guides such as N.A.D.A. to determine the useful life of vehicles. The useful life of a vehicle will affect the loan term as well as the finance spread. This takes into consideration the risk factor.

Mr. Holt testified that lending institutions in the area generally go with a 48 month loan term on a new vehicle but only go up to a 36 month loan maximum on a used vehicle. Since older vehicles depreciate faster, lending institutions often re-

quire an even shorter loan term for vehicles four years old or older in order to be adequately protected. Mr. Holt testified that, depending on the condition of the vehicle, there is generally not an increase in the spread if the car is under four years old, but the spread may increase when the vehicle is older. This evidence is helpful in fixing a risk factor on the fixed interest payable.

Equity calls for a broad scale to resolve the interest rate on claims secured solely by vehicles. The Court finds that a scale using the quoted rate of Treasury bills plus percentage point is fair to the debtor and the creditor, as well as other creditors of the case who seek payment under the debtor's plan.

The Court must establish a uniform rate for lending institutions in the area to apply in the scale. Since the Treasury bills rate quoted in the Wall Street Journal is generally the cost of money for most lending institutions, this rate shall be used in the scale as the rate quoted in said newspaper on the date the debtor files the Chapter 13 petition.[2]

The Court also notes that section 1322(c) of the Code requires that no Chapter 13 plan may propose payments over a period of more than three years, unless the court, for cause shown, authorizes the debtor to propose a plan, calling for payments extending up to five years. The Court in each case must make finding of cause if so extended.

The court realizes that not all of the cases will fall within the scale, and in those cases, the court will hear rebuttal evidence upon appropriate pleadings. This scale will however provide debtors and creditors with a fair and equitable place to start and, in

---

**1.** There will be very little delay administrating Chapter 13 plans because the scale resolves the interest questions and this will speed confirmation. "The effective date of the plan will ordinarily be provided for by the plan, and may be the date of which the order confirming the plan becomes final. However, the court will normally determine present value as of the date of the hearing on confirmation held under section 1324, since, as a practical matter, confirmation

will almost always follow within a brief time after the issues raised under section 1325(a)(5)(B)(ii) are resolved." 5 *Collier on Bankruptcy,* sect. 1325.06[4][a][i].

**2.** Using the date of filing to determine the rate, avoids the parties jockeying for a different quoted rate by demanding continuances, etc.

most cases, a resolution to the interest question.

For the reasons above, the scale of interest rates for secured claims is set forth hereafter:

In the case of vehicles up to four (4) years old, the interest rate shall be the current rate of Treasury bills plus a risk factor of one (1) percent; and the plan shall provide for a pay out not to exceed 48 months, unless the Court for cause shown extends the term when objections are interposed.

For a vehicle beyond four (4) years old, the interest rate shall be the current rate of Treasury bills plus a risk factor of two (2) percent payable over the remaining useful life of the collateral.

Accordingly, it is

ORDERED

that the trustee tender, within 10 days, a confirmation order computing and confirming the plan in accordance with the foregoing.