**In re Holly Sue JEWELL a/k/a Holly S. Jewell a/k/a Holly S. Dobbins, Debtor.**

**In re John Dale BEESON a/k/a J.D. Beeson, Ellen Lorraine Beeson a/k/a Ellen L. Beeson, Debtors.**

**In re Martin Robert KOPP d/b/a Bob Kopp and Associates, Debtor.**

**Bankruptcy Nos. 81–40280, 82–40036 and 82–40666.**

United States Bankruptcy Court, D. Kansas.

Aug. 17, 1982.

---

**45**

count factor currently paid on their secured claim during the life of a chapter 13 plan under 11 U.S.C. § 1325(a)(5). The actions involve identical questions of law and therefore have been joined for the purposes of rendering a decision pursuant to F.R.Civ.P. Rule 42(a).

The issue presented for determination is:

Under 11 U.S.C. § 1325(a)(5), what is an appropriate discount factor to be paid on claims secured by personal property.

The matter has been briefed and is ready to be resolved.

### FINDINGS OF FACT

The facts in this case are not in controversy. In *In Re Holly Sue Jewell,* First National Bank of Topeka has an allowed secured claim of $5,000, and was to receive a discount factor of 10%, the discount factor heretofore granted secured creditors in chapter 13 cases before this Court.

In *In Re John Dale and Ellen Lorraine Beeson,* Emporia State Bank and Trust Co. has an allowed secured claim of $44,043.46, and was also to receive the customary discount factor of 10%.

In *In Re Kopp,* Home State Bank & Trust has filed a proof of claim in the amount of $3,741.80, secured by a lien on an automobile valued by agreed order at $3,800. The annual contract rate of interest in the note underlying the debt is 18.5%.

Cary L. Standiferd, Topeka, Kan., for Holly Sue Jewell and the Beesons.

Byron C. Loudon of McDowell, Rice & Smith, Kansas City, Kan., for Martin Kopp.

Robert L. Baer of Cosgrove, Webb & Oman, Topeka, Kan., for First Nat. Bank.

Robert D. Kroeker of Roach & Mellinger, P.A., Emporia, Kan., for Emporia State Bank and Trust Co.

Lowell Flory of Flory & Karstetter, McPherson, Kan., for Home State Bank & Trust of McPherson, Kan.

Lloyd C. Swartz, Topeka, Kan., trustee.

### MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In these three chapter 13 proceedings secured creditors have objected to the dis-

### CONCLUSIONS OF LAW

Section 1325(a)(5)(B)(ii) states a chapter 13 plan must provide that

*the value, as of the effective date of the plan, of property to be distributed under the plan on account of such [secured] claim is not less than the allowed amount of such claim; ...*

Thus the holder of a secured claim must receive a discount factor based on an interest rate, which in this Court has been 10%. The Court recognizes that the discount factor, in order to reflect the current value of money to creditors, must bear some relation

to the current economic and market conditions. The Court also believes the current fixed discount factor based on an interest rate of 10% may not reflect the country's economic condition.

Many rates and combinations of rates are available and have been submitted to the Court for its consideration. Having reviewed the various rates suggested and those used by courts in reported decisions and considering the context in which the rates are to be applied, the Court is of the opinion that a discount factor tied to the auction of treasury bills best reflects the value of money to creditors in today's market place. Recently, Congress enacted § 302 of the Federal Courts Improvement Act of 1982, P.L. 97–164 (effective October 1, 1982), to set post judgment interest rates in federal court judgments (other than bankruptcy courts) at a new and varying rate, based on treasury bill auctions, and designed to set a realistic national rate tied to market conditions. Furthermore, other courts have recognized treasury bills as the best gauge of the current cost of short term money. See, e.g., *In Re Willis,* 6 B.R. 555, 6 BCD 1101 (Bkrtcy.N.D.Ill.1980).

The Treasury Department holds an auction of 52 week treasury bills every four weeks. Thus the rate will be subject to change 13 times per year. The dates for auctions are set in advance. The precise interest rate is certified to the Director of the Administrative Office of the United States Courts after each auction, and is reported in newspapers including the Wall Street Journal. In addition, the rate is available in a recorded message at the Treasury Department.

For example, the last auction of 52 week treasury bills was held on August 5, 1982. The $10,000 treasury bill sold for $8,868.10. The discount rate was 11.195%. The equivalent coupon issue yield was 12.41%, and the annual investment yield was 12.80%. The next auction will be held Thursday, September 2, 1982.

■ The Court believes the annual investment yield rate best reflects the value of money invested and holds that this rate on 52 week treasury bills is the interest rate on which the discount factor in chapter 13 cases should be based. This rate is that which is used in setting the rate paid on all savers' certificates by the various financial institutions.

The Court holds that the rate established by the auction of 52 week treasury bills that most recently precedes the filing of the chapter 13 bankruptcy petition is the rate that applies. For example, a petition filed on August 31, 1982 would have an interest rate on which the discount factor would be based of 12.80%. By establishing the discount factor on the date the chapter 13 petition is filed, instead of the prevailing rate on the date of confirmation, the Court avoids any jockeying for continuances just before confirmation by debtors and creditors in an attempt to receive a more favorable discount factor based on an upcoming treasury bill auction.

Petitions filed on the same day as the 52 week treasury bill auction will be governed by the rate established by that day's auction.

Because the computerized system currently utilized in chapter 13 cases will process only 2 decimal places, the Court holds that the treasury bill rate shall be rounded to the nearest one-hundredth of a decimal point. Thus, if a rate of 12.457% is established at an auction, the trustee will round that to 12.46%.

The Court emphasizes that this ruling applies only to the objecting creditors in the instant bankruptcy cases, and to creditors of debtors filing petitions on or after September 2, 1982. Once a discount factor is established for a given creditor in a given case, that discount factor will endure for the life of the debtor's plan.

■ Finally, this Court has in the past allowed an oversecured creditor to receive its contract rate of interest to the extent it is oversecured under 11 U.S.C. § 506(b). The Court now holds that when an oversecured creditor's contract rate of interest *exceeds* the applicable interest rate on which the discount factor is based, the

oversecured creditor can receive its contract rate of interest to the extent it is oversecured, thereafter to receive the applicable discount rate; however, if the contract rate of interest is less than the discount factor interest rate, the secured creditor can elect to receive the applicable discount factor interest on the portion of its oversecured claim.

Therefore, in the instant cases, the trustee is directed to determine the discount factor based on 52 week treasury bill rate on the date the instant debtors filed their chapter 13 petitions, and compute the discount factors to be afforded the instant objecting creditors in accordance with this opinion.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.