In re MILSPEC, INC. a Virginia corporation previously Columbia Woodworking and Design, Inc., a Virginia corporation, t/a Milspec, Inc., Debtor.

**Bankruptcy No. 84–00496–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Feb. 9, 1988.

---

Richard A. Golden, Fairfax, Va., for Debtor-in-Possession.

Michael A. Humphries, Sp. Asst., Office of the U.S. Attorney, Alexandria, Va., for U.S.

Norman E. Oliver, Asst. U.S. Trustee, Alexandria, Va.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter comes before the Court upon the objection by the United States to the rate of interest applied to its federal tax claim in the debtor's Plan of Reorganiza-

1. The government filed multiple proofs of claim for several kinds of federal taxes. "Claim" in the singular will hereinafter refer to the government's aggregate claim totalling $62,822.29.

2. The United States previously had filed an objection to the debtor's plan on April 24, 1986 on several grounds. On May 24, 1986, the United

tion. Milspec, Inc. ("debtor") filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on April 23, 1984, and filed its First Amended Disclosure Statement and Plan of Reorganization ("the Plan") on June 6, 1985. The debtor's plan provides for the deferred payments of the government's federal tax claim.[1] On May 24, 1986, the United States filed an objection pertaining to the interest rate applied to the government's claim.[2]

The debtor's plan provides for the application of interest to the government's tax claim at the rate specified in 28 U.S.C. § 1961(a) ("§ 1961"), the post-judgment interest rate applicable in civil cases. The government maintains that the plan must provide for the payment of interest at the statutory rate specified in 26 U.S.C. § 6621 ("§ 6621"), the rate of interest applied to delinquent tax payments.

The issue for determination is which rate of interest this Court should apply to the government's federal tax claim.

### Milspec's Claims

Milspec characterizes the government's tax claim as essentially an unsecured claim.[3] As such, the debtor contends that the United States has no ownership interest at stake in the debtor's estate and under § 1129(a)(9)(C) of the Bankruptcy Code is entitled to the present value of the amount owed, as determined by an interest rate commonly applied to riskless investments. The debtor notes that the universally accepted riskless rate of interest is the interest paid on United States treasury bills per 28 U.S.C. § 1961. The debtor asserts that in most cases, the value of a stream of future payments is determined by taking a riskless rate of return and adding a risk factor. In the case at hand, however, the debtor maintains that there are practical considerations which make the application of a risk factor inappropriate and unnecessary.

States withdrew its original objection and filed the single objection at issue in this case.

3. Of the government's claim totaling $62,822.29, $52,266.72 is unsecured and $10,555.57 is secured by a tax lien.

First, the debtor submits that when determining the appropriate rate of interest for any investment, the costs of collection and the risk of nonpayment readily justify an additional rate of return above that available to the purchasers of treasury bills. In addition, interest rates often reflect the element of profit to the investor. In contrast, the debtor claims, a creditor is not required to garnish, levy, expend attorney's fees to collect money, or post indemnity bonds. Moreover, the debtor adds, a reorganization plan does not provide a creditor with a profit in addition to his claims.

Second, the debtor maintains that if this Court chose to compensate the government for the risk inherent in the debtor and debtor's business activities, the parties might require several days of trial merely to establish a prima facie case to determine an interest rate which reflected such a risk. The debtor suggests that under § 1129 Congress intended bankruptcy courts to make a simple inquiry to ensure the payment of a creditor's claim and to provide additional compensation if the payment was not made in full at the time the plan was confirmed.

Therefore, the debtor concludes, this Court should use only a market rate analysis for riskless investments to compute the appropriate interest rate for the government's tax claims. The rate proposed by the debtor is that computed under 26 U.S. C. § 1961 which provides in part:

§ 1961. Interest

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.[4]

The actual computation of the interest prescribed in Section 1961 is done by the U.S. Treasury Department, which holds an auction of 52-week treasury bills every four weeks. *In re Jewell,* 25 B.R. 44, 46 (Bankr. D.Kan.1982). Thus, the Treasury Bill rate is subject to change in response to market conditions thirteen times a year. *Id.*

The government characterizes its claim without discussion as a federal priority tax claim.[5] The government contends that the money owed must be treated as a "coerced loan", and as such the court must apply an interest rate which is applicable to a loan under analogous circumstances. The government suggests that a court must look at the nature of the claim because that determines the market to which reference should be made for similar extensions of credit. The government then argues that a federal priority tax claim is most analogous to an Internal Revenue Service ("IRS") claim for delinquent taxes outside of bankruptcy under 26 U.S.C. § 6621. Essentially, the government claims, late and deferred taxes are debts owed to the IRS and should be governed by the same interest rate. The application of § 6621 to federal tax claims as well as delinquent tax claims, the government adds, would provide for the uniform treatment of all debtors of the

---

**4.** 28 U.S.C. § 1961(c)(1) provides in part:

(c)(1) This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at the underpayment rate or overpayment rate (whichever is appropriate) established under 6621 of the Internal Revenue Code. It would seem that under Section 1961(c)(1) that the interest rate prescribed in subsection (a) is inapplicable to the case at hand by its express terms. Courts have held, however, that an "internal revenue case" refers only to a case in which the action is against the taxpayer or under the Internal Revenue Service Code. *See U.S. v. Cole,* 733 F.2d 651, 653–55 (9th Cir.1984) (holding that an action to determine priority status of a federal tax claim was not an action against the taxpayer or under the IRS Code, and that § 1961(a) was appropriate rate of interest to apply to amount owed); *In re Connecticut Aerosols, Inc.,* 42 B.R. 706, 711 (D.Conn.1984) (bankruptcy case involving Internal Revenue taxes is not an "internal revenue case", therefore nothing in § 1961(c)(1) purports to limit scope of § 1129(a)(9) inquiry).

**5.** Only *UN*secured tax claims are entitled to priority status under 11 U.S.C. § 507(a)(7), thus the government's reference to its claim as a "priority tax claim" glosses over the existence of the portion of the government's claim that is secured.

IRS. Section 6621 now provides in part as follows:

§ 6621. Determination of rate of interest

(a) General rule.—

(2) Underpayment rate.—The underpayment rate established under this section shall be the sum of—

(A) the short-term Federal rate determined under subsection (b), plus

(B) 3 percentage points.

\* \* \* \* \* \*

[(b)] (3) Federal short-term rate.— The Federal short-term rate for any month shall be the Federal short-term rate determined during such month by the Secretary in accordance with section 1274(d).[6]

Although the method for computing § 6621 is different from that of § 1961, § 6621 also provides for monthly adjustments.[7]

Section 507 of Chapter 11 of the Bankruptcy Code ("the Code") specifies the kinds of claims that are entitled to priority in distribution and the order of their priority. *See* 11 U.S.C. § 507 (1984). Under certain circumstances, the unsecured claims of governmental units are entitled to seventh priority. *See* 11 U.S.C. § 507(a)(7). Section 1129(a)(9)(C) of the Code allows a court to confirm a plan that defers payments made to the holder of a 507(a)(7) claim[8]:

(c) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9)(C) (1987).

Although the secured portion of the government's claim is not entitled to priority, a court may confirm a plan that provides for the deferred payment of secured claims under § 1129(b)(2)(A)(i)(II). § 1129(b)(2) conditions the approval of such payments upon the assurance:

[(A)(i)] (II) that each holder of a [secured claim] receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property[.]

§ 1129(b)(2)(A)(i)(II); *see also United Sav. Assoc. of Texas v. Timbers of Inwood For-*

---

**6.** 26 U.S.C. § 1274(d) (1985) provides in part:
(d) Determination of applicable federal rate.— For purposes of this section—
[(c)] (i) Federal short-term rate.—The Federal short-term rate shall be the rate determined by the Secretary based on the average market yield (during any 1–month period selected by the Secretary and ending in the calendar month in which the determination is made) on outstanding marketable obligations of the United States with remaining periods to maturity of 3 years or less.

**7.** The method for computing the interest rate under § 6621 has been changed several times in the past seven years. In 1980, the rate was set every two years at 90% of the prime rate charged by commercial lenders. *In re Fisher,* 29 B.R. 542, 547 (Bankr.D.Kan.1983). Section 6621 was amended in 1982 to provide for yearly adjustments based on 100% of the prime rate charged in September of the preceding year. *Id.* Even with the amendments, section 6621 was criticized for lagging almost two years behind actual market rates. *See e.g., In re Tacoma,* 23 B.R. 547, 550 (W.D.Wash.1982) (§ 6621 arbitrarily set 20% interest rate based on highest prime rates over an 18–month period, thereby creating artificial rate which was static during period of significant fluctuation in average prime rate). In 1983, the rate was changed to provide for adjustments twice a year based on 100% of the average adjusted prime rate during the six month period ending September 30 and March 31. *Fisher,* 29 B.R. at 547. Even with the more recent amendments, § 6621 was still criticized because the § 6621 rate in effect on the date of a confirmation hearing could have been established from three and one half to nine and one half months prior to that date. *See Matter of Southern States Motor Inns, Inc.,* 709 F.2d 647, 652 (11th Cir.1983). In 1984, Section 6621 was amended again to provide for monthly adjustments. Bankruptcy Act, Pub.L. 98–369, Title 1, § 144(a), 98 Stat. 683 (1984).

**8.** Under earlier versions of the Bankruptcy Code, debtors were required to pay secured and priority claims in full before a plan of reorganization could be confirmed. *See* Bankruptcy Act of 1898, Ch. 541, §§ 64, 199, 30 Stat. 544, *added by* Act of June 22, 1938, Ch. 575, § 1, 52 Stat. 840, 893 (11 U.S.C. § 599 (1976) (repealed 1978)).

*est Assoc., Ltd.,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (under section 1129(b) secured claimant has right to receive present value of his collateral); 11 U.S.C. § 1129(a)(7) (with respect to each impaired class of claims, each holder of a claim of such a class is entitled to receive on account of his claim property of a value not less than value of creditor's interest in estate's interest in property that secures claims). The resolution of the issue at hand is dependent upon the proper interpretation of the phrase "value as of the effective date of the plan."

The legislative history of the Bankruptcy Reform Act of 1978 indicates that the term "value" means "present value," and the phrase entitles the creditor to receive the present value of his claim:

"Value as of the effective date of the plan," as used in paragraph (3) and in proposed 11 U.S.C. § 1179(a)(7)(B), 1129(a)(9), 1129(b), 1172(2), 1325(a)(4), 1325(a)(5)(B), and 1328(b), indicates that the promised payment under the plan must be discounted to present value as of the effective date of the plan. The discounting should be based only on the unpaid balance of the amount due under the plan, until that amount, including interest, is paid in full.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 408, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6364 (1978); *see also id.* at 414–15; 6370–71 ("[§ 1129(b)(2)] contemplates a present value analysis that will discount value to be received in the future"); 124 Cong.Rec. 32,406; 34,006 (1978) (explanatory statements of Rep. Edwards and Senator DeConcini indicating creditor with priority tax claim under § 507(a)(6) entitled to receive present value equal to that claim).

"Present Value" is a term of art in the financial community used to reflect the economic reality that a dollar received today is worth more than a dollar received in the future. *In re Fisher,* 29 B.R. 542, 543 (Bankr.D.Kan.1983). To compensate the

creditor for accepting deferred payment, the debtor is charged an additional amount determined by a rate of interest called the "discount rate." *Id.* If the parties cannot agree upon a rate, courts must determine the appropriate market rate to ensure that the deferred payments under the plan have a value equal to the present value of the allowed claim. 5 *Collier on Bankruptcy,* ¶ 1129.03 at 1129–62. *Collier* observes that the:

deferred payment of an obligation under a plan is a coerced loan and the rate of return with respect to such loan must correspond to the rate which would be charged or obtained by the creditor making a loan to a third party with similar terms, duration, collateral, and risk. It is therefore submitted that the appropriate discount rate must be determined by reference to the market interest rate.[9]

5 *Collier on Bankruptcy* ¶ 1129.03 at 1129–62–63 (15th ed. 1987); *see also In the Matter of Fi–Hi Pizza, Inc.,* 50 B.R. 258, 261–63 (Bankr.D.Mass.1984) (selection of discount rate requires judgment call and should not be static; "market rate" reflects rate lenders would lend to debtor under similar conditions with respect to time period, secured or unsecured status, market rate for riskless loans and financial liability of debtor).

The selection of an appropriate interest rate in § 1129 cases is complicated by the issue of whether a true present value analysis is applicable to the government and/or bankruptcy cases. In *In re Fisher,* the court observed that reflected in the interest rate acceptable to the average secured creditor is the cost of collection, the risk of default and the element of profit. 29 B.R. 542, 544–45 (Bankr.D.Kan.1983). The court noted, however, that those costs are not relevant to chapter 13 claims. *Id.* The court also observed that the "coerced loan" theory could not fairly be applied to the IRS because The IRS did not "lend" money and there were virtually no credi-

---

9. Collier suggests that the range of prevailing interest rates can be ascertained by comparing the prime rate, federal funds rate, discount rate, call money rate, commercial paper rate, certifi-

cates of deposit rate, and the treasury bill rate. *See* 5 *Collier on Bankruptcy* ¶ 1129.03 at 1129–63, n. 45.

tors similar to the IRS in the marketplace to whom the IRS could be compared. *Id.* at 545; *see also In re Matter of Fi–Hi Pizza,* 40 B.R. 258, 271 n. 29 (Bankr.D. Mass.1984) (noting tax claims do not originate in consensual arrangement but in breach of legal arrangement, therefore they have no comparative market).

█ Prior to making an evaluation of the interest rates suggested by the parties, the Court must address a problem inherent in their initial approach to the instant case. The debtor asks this Court to regard the government's claim as though it was unsecured. The government itself inaccurately refers to its claim as a priority tax claim. The only precise way to characterize the government's claim is as a partially secured and partially unsecured tax claim. The portion of the government's claim which is unsecured is entitled to priority, the secured portion is not.

█ As noted by *Collier,* the existence of collateral is one factor a court must consider when selecting an interest rate that provides a creditor with the present value of his claim. *See also In re Monnier Bros.* 755 F.2d 1336, 1339 (8th Cir.1985) (listing "prospects for appreciation or depreciation of value of security" as one factor to consider when selecting interest rate under § 1129(b)(2)). That factor remains relevant regardless of whether the creditor's interest in the collateral is less than the amount of his claim. Consequently, this Court cannot oblige the parties' intent to mischaracterize the claim at bar and simply disregard the existence of the government's lien. Accordingly, the debtor's suggestion to apply a "riskless" rate of interest to reflect the government's lack of "ownership interest" is inappropriate.

Having clarified the type of claim before this Court and declined to apply § 1961 on the basis suggested by the debtor, we must now consider which rate of interest will provide the government with the present value of its claim. We turn first to the decisions of the Circuit Courts of Appeal upon which the parties have relied that have addressed generally the issue of which interest rate to apply to a creditor's

claim in chapter 11 and chapter 13 cases. *See In re Monnier Bros.* 755 F.2d 1336 (8th Cir.1985); *Matter of Southern States Motor Inns, Inc.,* 709 F.2d 647 (11th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *Burgess Wholesale Mfg. Opticians, Inc.* 721 F.2d 1146 (7th Cir.1983); *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 727 (6th Cir.1982).

The first circuit to consider which interest rate to apply to a creditor's claim in a bankruptcy case was the Sixth Circuit, in *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982). In *Memphis,* the creditor's claim arose out of an automobile loan, which was partially secured and partially unsecured. *Id.* at 430. The court stated that § 1325(a)(5)(B) of the Code requires a court to assess interest on a secured claim for the present value of the collateral so as not to dilute the value by delaying payment, and considered which interest rate to apply to a creditor's secured claim. *Id.* at 429–31; *see* 11 U.S.C. § 1325(a)(5)(B) (1982) (chapter 13 plan must afford secured creditor the value of property to be distributed under plan). The court determined that absent special circumstances bankruptcy courts should apply the current market rate of interest used for similar loans in the region. *Id.* at 431. The court observed that the theory behind its holding was that the creditor was in essence making a new loan to the debtor in the amount of the current value of the collateral. *Id.* The *Memphis* court's decision is representative of the "coerced loan" theory.

In *Matter of Southern States Motor Inns, Inc.,* the Eleventh Circuit specifically considered which interest rate to apply to the deferred payments of federal taxes pursuant to 11 U.S.C. § 1129(a)(9)(C). 709 F.2d 647, 649 (11th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). In *Southern States,* the debtor's amended plan provided for the payment of interest, at the rate of 6% on the government's claims. *Id.* at 649. The government urged the court to note that the U.S. treasury bill rate was 14%, thus the appropriate interest rate under § 1129

should at least be that set by § 6621, 12%. *Id.* The bankruptcy court determined that 12% was the prevailing market rate, but that the percentage should be decreased by 1% for "rehabilitation aspects". *Id.* The district court affirmed. *Id.*

Upon review, the Eleventh Circuit examined the legislative history of the Code and found that Congress used the phrase "value, as of the effective date of the plan" to insure that creditors would receive the present value of their claims. *Id.* at 650. The court then stated that the factors relevant in determining an appropriate interest rate under § 1129 were those summarized by Collier:

> The appropriate discount [interest] rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount [interest] rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

*Id.* at 651; *see* 5 *Collier on Bankruptcy* ¶ 1129.03, at 1129–65 (15th ed. 1982).

According to the criteria set out by Collier, the rate computed under § 6621 was inappropriate for two reasons. *Southern States,* 709 F.2d at 651. First, the § 6621 rate did not necessarily reflect the prevailing market rate. *Id.* Second, the application of § 6621 to all deferred payments under § 1129(a)(9)(C) would ignore the "variations between the length of the payout period, the quality of the security, and the risk of subsequent default." *Id.* at 652. Moreover, the court held, the district court erred in deducting 1% from the interest rate selected because Congress intended that creditors required to accept deferred payments under § 1129 be placed in as good a position as they would have been had the present value of their claims been paid immediately. *Id.* The 11th Circuit held that the interest rate selected pursuant to § 1129(a)(9)(C) should reflect the current market rate without a reduction for the "rehabilitation aspects" of the plan. *Id.* at 653.

In light of the prevailing treasury bill rate of 14% and the willingness of the government to accept a 12% interest rate, the 11th Circuit remanded the case with instructions to apply the § 6621 rate without any reduction. *Id.*

The Eighth Circuit was the next circuit to address which rate of interest to apply under the "cram down" provisions of chapter 11 in *In re Monnier Bros.,* 755 F.2d 1336 (8th Cir.1985); *see* 11 U.S.C. § 1129(b)(2)(A)(i)(II) (reorganization plan may be confirmed over objection of secured creditor if plan affords creditor with indubitable equivalent of claim). The Eighth Circuit observed that the task of a bankruptcy court was to determine the interest rate that would ensure the creditor's receipt of the full value of his claim. 755 F.2d at 1338. Relying primarily on the criteria set out by Colliers and citing *Southern States* only for indirect support, the court affirmed the district court's decision to apply the interest rate identified in the contract between the debtor and the creditor. *Monnier, Id.* at 1339. The *Monnier* court observed that the contract rate presumably was the rate agreed upon in an arms length bargain and reflected the prevailing cost of money. *Id.; see also Matter of Burgess Wholesale Mfg. Opticians,* 721 F.2d 1146, 1147 (7th Cir.1983) (determining "value, as of the effective date" under § 1129(a)(9)(C) means deferred payments must be adjusted to allow for changing value of dollar but declining to identify method to compute rate of interest absent input from bankruptcy and district courts).

In summary, the circuits which have considered the interest rates applicable to chapter 11 and 13 claims are in agreement with respect to the court's duty to ensure that a creditor receive the present value of his claim. *Monnier,* 755 F.2d at 429; *Southern States,* 709 F.2d at 650; *Memphis,* 692 F.2d at 1338. To do so, the circuits have generally held that courts should apply an interest rate that reflects the prevailing market rate. *See Monnier,* 755 F.2d at 1339; *Southern States,* 709 F.2d at 651; *Memphis,* 692 F.2d at 431. The above decisions did not specify the

preferred method of computation, however, which resulted in the application of a wide variety of interest rates on the bankruptcy and district court levels. *Cf. In re Connecticut Aerosols*, 42 B.R. 706, 711 (Bankr. D.Conn.1984) (applying § 1961(a) to § 1129(a)(9)(C) claim); *with In re Architectural Design*, 59 B.R. 1019, (W.D.Va.1986) (applying § 6621 to § 1129(a)(9)(C) claim); *with In re Matter of Fi–Hi Pizza*, 40 B.R. 258, 271 (Bankr.D.Mass.1984) (applying interest rate 2.5% above § 6621 rate to § 1129(a)(9)(C) claim.)

Although no cases have determined that a claim which is "essentially unsecured" is entitled to the application of an interest rate which reflects a "riskless rate" of investment, several courts have determined that the application of the rate specified in 28 U.S.C. § 1961 is the most appropriate one to apply to a federal tax claim under § 1129. *See In re Connecticut Aerosols*, 42 B.R. 706, 711 (D.Conn.1984), *aff'g In re Connecticut Aerosols*, 31 B.R. 883, 886–87 (Bankr.D.Conn.1983); *In re Tacoma*, 23 B.R. 547, 550 (Bankr.W.D.Wash.1982); *see also In re Jewell*, 25 B.R. 44, 46 (Bankr.D. Kan.1982) (discount factor tied to auction of treasury bills best reflects value of money to secured creditor in today's market place under chapter 13); *In re Frost*, 47 B.R. 961, 965 (D.Kan.1985) (affirming *Jewell*).

Of primary concern to courts persuaded to apply 28 U.S.C. § 1961 was that under § 1129(a) courts must ensure that the government receives the present value of its claim and to do so must select an interest rate which is reflective of the economic conditions and market rates prevailing on or about the date of confirmation of the reorganization plan. *See Connecticut Aerosols*, 42 B.R. at 711; *Connecticut Aerosols*, 31 B.R. at 885; *Tacoma*, 23 B.R. at 549; *see also Jewell*, 25 B.R. at 46. These courts found that the interest rate computed under § 1961 had the virtue of being more closely tied to current economic conditions and best provided the government with the full amount of its claim. *See Connecticut Aerosols*, 31 B.R. at 885; *Tacoma*, 23 B.R. at 550; *see also Jewell*, 25 B.R. at 46.

These same courts rejected the automatic application of § 6621 in chapter 11 tax cases noting that an interest rate computed under § 6621 was artificial and did not necessarily reflect the prevailing market rate and the variety of factors relevant to determining the proper rate. *See Connecticut Aerosols*, 42 B.R. at 708–10; *Connecticut Aerosols*, 31 B.R. at 886 (citing *In re Southern States Motor Inns, Inc.*, 709 F.2d at 651–52); *Tacoma*, 23 B.R. at 550.

When considering the question of which interest rate to apply to federal tax claims in bankruptcy, courts have also applied 11 U.S.C. § 6621. *See Architectural Design*, 59 B.R. 1019 (W.D.Va.1986) (affirming *In re Smith*, 58 B.R. 652 (Bankr.W.D.Va. 1985); *In re Hathaway Coffee House, Inc.*, 24 B.R. 534 (S.D.Ohio 1982); *In re Nite Lite Inns*, 17 B.R. 367 (Bankr.S.D.Calif. 1982); *In re Crotty*, 11 B.R. 507 (Bankr.N. D.Tex.1981); *In re Busman*, 5 B.R. 332 (Bankr.E.D.N.Y.1980). *In re Ziegler*, 6 B.R. 3 (Bankr.S.D.Ohio 1980).

The first court to adopt the § 6621 rate was *In re Zeigler*, 6 B.R. 3 (Bankr.S.D.Ohio 1980). In *Zeigler*, the court considered whether a secured creditor should receive more than the amount of his claim when promised payments over a period of time in a plan of reorganization. *Id.* at 5. The court held that a payment over a period of time would not be worth as much as a payment of the same amount today. *Id.* The court in considering the § 6621 rate, noted that § 6621 was "reasonably responsive to current economic conditions ... subject to periodic revision and yet not an unfair burden on chapter 13 debtors." *Id.* at 6. Decisions applying § 6621 thereafter cited *Zeigler* without significant discussion. *See e.g. In re Crotty*, 11 B.R. at 510; *In re Busman*, 5 B.R. at 341.

Subsequent decisions concluded that the application of § 6621 should not necessarily be automatic. In *In re Nite Lite Inns*, for example, the court considered whether § 6621 was appropriate for "cram down" purposes under 11 U.S.C. § 1129(b)(2)(A)(i)(II). 17 B.R. 367, 373 (Bankr.S.D.Calif.1982). The *Nite Lite*

court held that absent a showing that § 6621 was not indicative of economic conditions, § 6621 would be accepted as prima facie evidence of the appropriate discount factor to be applied in a Chapter 11 plan on an unsecured claim. *Id.* at 373; *see also In re Hathaway Coffee House,* 24 B.R. 534 (Bankr.S.D.Ohio 1982) (not advocating strict application of § 6621 but applying § 6621 rate at government's urging absent contrary position by debtor).

Most recently, courts applying § 6621 have done so primarily because § 6621 is the designated rate of interest applicable to delinquent tax payments. *See In re Smith,* 58 B.R. 652 (Bankr.W.D.Va.1985) *aff'd, In re Architectural Design,* 59 B.R. 1019, 1022 (W.D.Va.1986) (under market rate approach courts should select the interest rate applicable in similar transactions, and most analagous transaction to deferral of tax payments is late payment of taxes under § 6621).

Although the debtor and government have requested the application of either the § 6621 or § 1961 rates, the vast majority of cases considering the appropriate rate of interest to apply to § 1129 claims have rejected the strict application of a statutory rate of interest and have preferred to examine market rates on a case-by-case basis. *See In re Camino Real Landscape Maintenance Contractors,* 818 F.2d 1503, 1508 (9th Cir.1987); *United States v. Neal,* 789 F.2d 1283, 1286 (8th Cir.1986); *Matter of Southern States Motor Inns,* 709 F.2d 647, 651–53 (11th Cir.1985), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *Matter of Fi–Hi Pizza, Inc.,* 40 B.R. 258, 271–72 (Bankr.N.D.Miss.1983); *In re Hernando Appliances, Inc.,* 41 B.R. 24, 26 (Bankr.N.D.Miss.1983); *In re Moore,* 25 B.R. 131, 134 (Bankr.N.D.Tex.1982);

*Matter of Bay Area Services,* 26 B.R. 811, 814 (Bankr.N.D.Fla.1982); *In re Welco Indus. Inc.,* 60 B.R. 880, 14 B.C.D. (CRR) 629, 631–32 (9th Cir.1986); *see also In re Fisher* 29 B.R. 542, 551 (Bankr.D.Kan.1983) (determining IRS entitled to discount rate on secured claim equal to treasury bill rate plus a 1% risk factor under § 1325); *In re Roxbury Residential Assoc. Inc.,* 35 B.R. 348, 349 (Bankr.D.Conn.1983) (rejecting application of interest rate provided by state statute for delinquent tax payments and holding debtor's plan must provide for payment of interest on town's tax claim reflective of prevailing market rate for loan under analogous circumstances).

In *United States v. Neal,* the 8th Circuit expressly considered which rate of interest to apply to the deferred payments of delinquent federal taxes to provide the government with the present value of its claim under § 1129(a)(9)(C). 789 F.2d 1283, 1284 (8th Cir.1986). In *Neal,* the government's claim totaled approximately $46,000.00. *Id.* at 1284. Of that claim, approximately $31,000.00 was secured by liens against the debtor's property.[10] The debtor's reorganization plan provided for the payment of the government's claim with interest determined by § 1961(a). *Id.* at 1285. The government maintained that it was entitled to the interest rate established by § 6621. *Id.*

Upon determining that the factors governing the selection of an appropriate interest were those outlined by Collier, the Eighth Circuit affirmed its prior determination in *In re Monnier Bros.,* 755 F.2d 1336, 1339 (8th Cir.1985) that the appropriate interest rate must approximate the prevailing market rate for a loan of comparable risk and term. *Id.* at 1285–86. The *Neal* court rejected the § 1961 rate proposed by

---

**10.** The *Neal* court in a footnote observed that the parties and the bankruptcy court had interpreted § 1129 to apply to the secured portion of the government's claim. 789 F.2d at 1284 n. 2. The 8th Circuit rejected that interpretation noting that the priority status under § 1129(a)(9)(C) was expressly limited to unsecured claims. *Id.* The court stated, however, that the government was still entitled to interest on the secured portion of the claim under § 1129(a)(7). *Id.; See* 11 U.S.C. § 1129(a)(7)

(allowed secured creditor entitled to receive on account of his claim property of a value not less than value of creditor's interest in property that secures claims). The *Neal* court noted that the distinction between the secured and unsecured portion of the government's claim remained relevant to the consideration of which interest rate would provide the government with the present value of its claim. *See* 789 F.2d at 1284–85 n. 2.

the debtor because a court's reliance upon only the creditor's borrowing costs was clearly contrary to the approach referred to in *Monnier Bros. Id.* at 1286.

The *Neal* court also rejected the bankruptcy court's holding that a floating rate of interest would better reflect prevailing market rates and provide the government with the present value of its claim. *Id.* The court noted that under § 1129 present value must be determined "as of the effective date of the plan", and criticized the use of a floating rate because a determination of the feasibility of the plan is a prerequisite for confirmation and would be difficult to ascertain if the interest rate selected varied during the life of the plan. *Id.*

The court then began its own inquiry of the best interest rate to apply to the deferred payments of federal tax claims under § 1129 by observing that the "inquiry is complicated by the fact that there is no 'market' for the type of involuntary loan involved" under § 1129. *Id.* In examining the appropriateness of § 6621, the Eighth Circuit rejected the government's contention that § 6621 should be the exclusive measure of the rate to apply to the government's claim yet acknowledged that the § 6621 rate was clearly relevant. *Id.* at 1287. The mandatory application of § 6621 was deemed inappropriate because: 1) the § 6621 rate may lag behind the actual market rate, 2) it ignores the variations in the length of payment periods, and in the quality of a creditor's security, and 3) the phrase "value as of the effective date" appears in several subsections of the Code and should not be determined by the simple reference to § 6621 in only the § 1129 case. *Id.* at 1288–89.

The Eighth Circuit acknowledged that the application of § 6621 would save the courts time and money, but noted that bankruptcy courts should hold hearings at which both the debtor and government could present evidence as to the prevailing market rate on a comparable loan. *Id.* at

1289. The § 6621 rate remains relevant in that it reflects an attempt by Congress to charge taxpayers the prevailing market rate on tax liabilities. *Id.; Accord In re Camino Real Landscape Maintenance Contractors,* 818 F.2d 1503 (9th Cir.1987) (following *Neal,* adding only that although § 6621 was recently amended to conform to prevailing market rates, § 6621 reflected tax objectives and could be altered by Congress at any time pursuant to those objectives).

 Upon reviewing the various alternatives available to this Court, we adopt the market rate/case-by-case approach as set forth by the Eighth Circuit in *Neal.* As noted by *Neal* and Circuit Court decisions prior, the primary goal of an § 1129 inquiry is a determination of what interest rate will provide a creditor with the present value of his claim. This end could not be achieved by the strict application of a statutory rate of interest. It is well settled that the appropriate rate of interest is the prevailing market rate for a loan with like terms. If the debtor and creditor cannot agree upon a rate, the court must select a rate which reflects a consideration of the extent to which the claim is secured, the quality of security, the length of the payment period, and the potential risk for default. *See Neal,* 789 F.2d at 1285; *see also Southern States,* 709 F.2d at 651; 5 *Collier on Bankruptcy* ¶ 1129.03 at 1129–62 (15th ed. 1987). Such a selection must be done on a case by case basis to ensure that the unique aspects of each claim and schedule of deferred payments are reflected in the rate of interest chosen.[11] The treasury bill rate and the § 6621 rate remain prima facie indicators of the prevailing market rates. The considerations of time and money, and as the government suggests here, the uniform treatment of defaulting taxpayers, must give way to the court's obligation to ensure that a creditor accepting deferred payments under a plan of reorganization ultimately will receive the actual

---

11. Accordingly, this Court declines to hold that the costs and risks attendant to the repayment of claims under a reorganization plan are invariably lower than would be applicable to claims outside of bankruptcy. Such factors are just two of the many that must be assessed on a case-by-case basis.

or present value of his claim. *See Neal,* 789 F.2d at 1287.

 In view of the limited evidence in the record before us, we are unable to select the appropriate rate of interest in this case. Therefore, this matter will be set for further hearing to enable the parties to present such evidence as they deem appropriate pertaining to the prevailing market rates for a loan of comparable terms at this time. The rate ultimately selected will remain constant for the duration of the plan.[12]

Accordingly, the objection to the debtor's plan filed by the United States is sustained. A further hearing on confirmation of the plan will be scheduled as indicated above.

An appropriate order will enter.

---

**12.** The Court notes that the government in the instant case supported the application of a floating rate of interest at the hearing on the Government's Objection to the Confirmation of the Debtor's Plan. The government did not address specifically its request for a floating rate in its supporting memorandum. Nevertheless, this Court follows the holding in *Neal* that the interest rate selected must remain constant throughout the payment period of the plan. *See Neal,* 789 F.2d at 1286.