**In re Lawrence R. JANKINS, Debtor.**

**Bankruptcy No. 87–00922–AB.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Feb. 8, 1995.

Richard Stahl, Dixon, Smith & Stahl, Fairfax, VA, for debtor.

Robert Coulter, Asst. U.S. Atty., Alexandria, VA, for Office of U.S. Atty.

### MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the Court on the motion of the United States of America under Section 1112(b) of the Bankruptcy Code to dismiss the chapter 11 case based on material default by the debtor with respect to the confirmed plan. After notice to all creditors, a hearing was held in open court on January 31, 1995, attended by counsel for the United States and counsel for the reorganized debtor. This memorandum opinion constitutes the Court's findings of fact and conclusions of law as required by Fed. R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

The position of the United States, simply stated, is that the debtor has failed to make the payments required by the confirmed plan with respect to the priority tax claim of the Internal Revenue Service and owes in excess of $34,000.00. The debtor, while conceding that some payments have been late, asserts that he has paid all of the Internal Revenue Service claim, except for $1,705.32. The debtor asserts that he is prepared to pay that amount immediately. The difference between the views of the United States and the debtor as to the amount owed arises, not from any dispute as to what has been *paid*, but rather from their differing interpretation of what was *required* to be paid under the plan. Specifically, the United States says that it is entitled to post-confirmation interest on its claim, while the debtor says that the plan does not provide for such interest.

The debtor further argues that the Internal Revenue Service is not actually entitled to any payment at all under the plan (although the debtor has in fact been making payments) because the Service did not file a second, confirmatory, proof of claim as required by the terms of the confirmed plan.

■ The essential facts are not in dispute. The debtor, an individual, filed a voluntary chapter 11 petition in this Court on May 4, 1987. On February 3, 1988, he filed a proposed plan of reorganization which, after notice and a hearing, was confirmed by this Court on September 19, 1988. With respect to the priority claim of the Internal Revenue Service, the plan provided as follows in Article V:

> 5.2 Class 2: This class consists of the priority tax claim of the United States (I.R.S.) Taxes due the Internal Revenue Service are $45,657.00 plus interest. This amount is based on the 1984, 1985 and 1986 income tax returns. The amount due will be paid pro rata with attorneys fees and the Class 3 creditors over the next 60 months from the date of confirmation as described in paragraph 5.1. Payment shall first be applied to principal and then to interest, if any. Any penalty which may be due will be treated as any other unsecured claim.[1]

The plan further included, buried in Article VI ("Implementation"), the following additional language:

> Unless provided for herein, all payments will be without interest or late charges;
>
> \*    \*    \*    \*    \*    \*
>
> Unless otherwise provided for herein, creditors have eighty-five (85) days from the date confirmation [sic] of the Plan to

file their proofs of claim, whether or not they have not [sic] previously done so, and whether or not they are impaired. The failure to comply with this filing requirement will result in disallowance of the claim.

The Internal Revenue Service did not object to confirmation of the plan. Under then-Local Rule 3003,[2] claims in chapter 11 cases were required to be filed within 90 days of the date set for the first meeting of creditors. The meeting of creditors was set for June 15, 1987, making September 14, 1987, the bar date for claims. The Internal Revenue Service filed three proofs of claim in the case. The first, filed on July 22, 1987, in the amount of $80,550.00, was based on estimates of the taxes due, since the debtor had not filed returns. A revised proof of claim, filed on October 15, 1987, asserted a priority claim in the amount of $49,403.42[3] and a general unsecured claim in the amount of $20,593.45. A third proof of claim was filed on March 20, 1989, asserting an additional priority claim in the amount of $12,973.14 for "100% penalty."[4] No objection was filed to any of the Internal Revenue Service proofs of claim. No decree closing the chapter 11 case has been entered, and the case remains open on the Court's docket.

The debtor's position is that the plain language of the plan provides only for the payment to the Internal Revenue Service of $45,657.00 plus whatever amount of interest was due through confirmation. The omission of any provision for the payment of postconfirmation interest was, according to debtor's counsel, intentional. Debtor's counsel candidly admitted that, had the Internal Revenue Service objected, Section 1129(a)(9)(C)

---

1. Under the plan, unsecured claims (Class 9) would receive nothing "unless there are funds left over after satisfying priority claims." Since the plan, however, did not propose any fixed dollar amount of payments, but only required the debtor to pay to an escrow agent, on a monthly basis, sufficient funds out of his future earnings to satisfy claims in Classes 1 though 7, the provision for payment of unsecured claims is wholly illusory.

2. The bar date in former Local Rule 3003 has been carried over to current Local Rule 310 without alteration.

3. This amount included $45,657.00 for 1984, 1985, and 1986 individual income taxes and $3,746.42 in prepetition interest.

4. Neither party addressed the allowability of the amount set forth in the third proof of claim, and the Court, in the context of the present motion, expressly does not decide whether such claim was timely filed, should be treated as allowed, or has been discharged.

of the Bankruptcy Code would have required payment of post-confirmation interest,[5] but he vigorously argues that the Internal Revenue Service, not having objected, is bound by the provisions of the confirmed plan.

■ At the outset, the Court is satisfied that it has jurisdiction to construe the terms of the plan and to determine whether the debtor has complied with the plan. Article X, Section 10.1 of the confirmed plan specifically provides for the retention of jurisdiction by this Court after confirmation "[t]o hear and determine any dispute under this plan." There has never been an order closing the case, and the Internal Revenue Service, by filing the motion to dismiss and affirmatively asserting the debtor's non-compliance with the plan as the ground for dismissal, has necessarily placed in issue the question of just what the plan requires the debtor to pay. While the jurisdiction of a bankruptcy court after confirmation in a chapter 11 case is necessarily restricted,[6] and while plan defaults do not necessarily require resort to the bankruptcy court,[7] the bankruptcy court's jurisdiction is appropriately exercised where there has been no order closing the case and the dispute involves interpretation of the plan and its application to a pre-petition debt.

■ There is no question that the United States is bound to the same extent as any other creditor by the terms of a confirmed chapter 11 plan to which it has failed to object. *United States v. Carolina Parachute Corp.*, 907 F.2d 1469, 1473 (4th Cir.1990) (Government could not relitigate assumability of contract where chapter 11 plan expressly provided for assumption, and Government neither objected to confirmation nor appealed order of confirmation). The Court accepts the representation of the debtor that his subjective intent was *not* to pay post-confirmation interest, and it is clear that Article V, Section 5.2 of the plan can be read consistently with that purpose. The question, however, is whether the plan can also be read consistently with the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code, since, as a matter of sound bankruptcy policy, an ambiguous plan provision should be construed in such a way that it comports with rather than contravenes an express provision of the Bankruptcy Code.[8]

■ The Court concludes that the language of Section 5.2 is, as an objective matter, ambiguous with respect to post-confirmation interest. While it never explicitly states that the debtor *will* pay such interest, it does describe the Internal Revenue Service priority claim as being "$45,657.00 *plus interest*," states that "the amount due" will be paid over 60 months, and states that payment will

---

5. § 1129. Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

\* \* \* \* \* \*

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

⌐ \* \* \* \* \*

(C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

6. As one treatise observes, the reorganized debtor is similar to "a baby being weaned from its mother's milk. Like the mother of a growing child, the court continues to supervise the debtor and has limited, though continuously decreasing, power to adjust, modify, or give orders with respect to the plan and the debtor's behavior. As time passes, both the court's interest in doing so

and its right to interfere gradually diminish." 3 Epstein et al., Bankruptcy, § 10–32.

7. 3 Epstein et al., Bankruptcy, § 10–29 ("Although discharge enjoins creditors from taking action to collect preconfirmation debts, a default by the debtor in completing payments of its restructured debts \* \* \* leaves creditors free to pursue their normal remedies without first seeking relief in the bankruptcy court.")

8. The debtor suggests that Section 1129(a)(9)(C) has not necessarily been contravened, since the statute allows non-conforming treatment where the creditor otherwise agrees, and he suggests that the Internal Revenue Service, by failing to object, effectively consented to the treatment it received under the plan. This Court, however, construes the term "has agreed" in Section 1129(a)(9) as requiring the affected creditor's affirmative concurrence and not mere failure to object, notwithstanding the ancient legal maxim, *Qui tacet consentire videtur, ubi tractatur de ejus commodo* ("He who keeps silent is assumed to consent, when his interest is at stake.").

"first be applied to principal *and then to interest,* if any." In short, even though nothing in the quoted language *requires* the payment of post-confirmation interest, neither is it *inconsistent* with such a requirement. To the extent that there is ambiguity, both the creditor whose ox the debtor is seeking to gore and the court called upon to confirm a plan have a right to expect that the plan comports with the express requirements of the Bankruptcy Code. Accordingly, the Court construes Article V, Section 5.2 as requiring the debtor to pay post-confirmation interest on the Internal Revenue Service's priority tax claim.[9]

■ As noted above, the debtor also contends that because the Internal Revenue Service did not *refile* its claim during the 85–day window commencing with the effective date of confirmation, it is now barred from asserting *any* claim. As an initial matter, the Court observes that no provision of the Bankruptcy Code supports the unilateral imposition by the debtor of a requirement to refile a claim that has already been properly filed. Section 501(a) of the Bankruptcy Code provides, "A creditor or indenture trustee may file a proof of claim." Under Section 502(a) of the Bankruptcy Code, "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest * * * objects." Federal Rule of Bankruptcy Procedure 3003(c)(3), governing the time for filing proofs of claim in chapter 11 cases, states, "The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." In this District, the time for filing claims in chapter 11 cases is fixed by local rule at 90 days from the date set for the first meeting of creditors. Under Federal Rule of Bankruptcy Procedure 3001(f), a properly executed and filed proof of claim "shall constitute *prima facie* evidence of the validity and amount of the claim." A creditor familiar with the Federal Rules of Bankruptcy Proce-

dure and the Local Rules of this Court would have no reason to anticipate or expect that a plan of reorganization would (or could) impose additional requirements with respect to allowance of claims beyond those imposed by the applicable rules. While the debtor has broad latitude in drafting a chapter 11 plan, the plan may include only provisions "not inconsistent with the applicable provisions of this title." Section 1123(b)(5), Bankruptcy Code. Under Section 502(a), the Service's timely filed proof of claim is "deemed allowed" unless objected to. This Court does not construe the inclusion of the refiling language in Article X of the plan as meeting the requirements of Federal Rule of Bankruptcy Procedure 3007, which governs the assertion of objections to claims.

■ Additionally, as the United States pointed out during oral argument, the plan language establishing the refiling requirement is prefaced by the clause, "Unless otherwise provided for herein...." Clearly, the claim of the Internal Revenue Service is "provided for," since Article V, Section 5.2 of the plan specifically acknowledges that a tax liability to the Internal Revenue Service is "due" and states that it "will be paid...." The 85–day refiling requirement, moreover, is buried in the middle of a lengthy section of the plan captioned "Implementation" and is not highlighted in any manner whatsoever. Finally, the reorganized debtor has, notwithstanding the cited language, made payments for five years on account of the Internal Revenue Service claim. Either the debtor himself did not construe the 85–day refiling requirement to apply to a creditor, such as the Internal Revenue Service, who was specifically provided for under the plan, or else the debtor, by his own conduct in making payments on account of the claim, is estopped from now asserting that refiling was required as a condition to receiving payments.

■ Although the Court concludes that debtor's plan requires the payment of

---

**9.** Since the provision in the plan for application of payments first to taxes due then to interest does not contravene any provision of the Bankruptcy Code and is not otherwise inconsistent with any provision of the Code, it is binding on the Internal Revenue Service. Because neither party has raised the issue of the appropriate

interest rate, the Court does not address the issue. *See, In re Milspec, Inc.,* 82 B.R. 811 (Bankr.E.D.Va.1988) (rate of interest on deferred tax claim based on market rate/case by case approach; constant rate rather than floating rate is to be used).

post-confirmation interest on the Internal Revenue Service priority claim, and although the debtor concedes that he has not paid such interest, it by no means follows that dismissal of the chapter 11 case, as requested by the United States, is the appropriate remedy. Section 1112(b) of the Bankruptcy Code provides,

> * * * on request of a party in interest or the United States Trustee, and after notice and a hearing the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
>     *     *     *     *     *     *
>
> (8) material default by the debtor with respect to a confirmed plan.

Although the debtor's failure to pay the Internal Revenue Service post-confirmation interest on its priority claim constitutes a default under the confirmed plan and may fairly be characterized as "material," it is also true that very substantial payments have been made on account of the claim, and there is no evidence before the Court that other creditors have not been paid as required by the plan. In short, it appears that, except for the post-confirmation interest due to the Internal Revenue Service and approximately $1,700.00 of the tax itself, the debtor has fully complied with the confirmed plan. Moreover, it should have been apparent from the beginning of payments under the plan that the amount which the debtor was paying did not include any post-confirmation interest, and the Internal Revenue Service has waited until more than five years after confirmation to bring this motion.[10] Where all other creditors have been paid as provided for in the plan, the Court cannot conclude that dismissal of the case is in the best interest of creditors generally, especially since dismissal is not required in order to afford the Internal Revenue Service a remedy. A confirmed plan of reorganization is in the nature of a novation, and the creditor who does not receive the payments promised under the plan is not required to seek relief in the bankruptcy court but may pursue its normal remedies

with respect to the restructured debt. *See, Carolina Parachute, supra,* at 1474 (once plan was confirmed, Government was free to terminate assumed contract for reasons other than prepetition default). Although in this case the confirmed plan included provision for this Court to retain jurisdiction to decide "any dispute" under the plan, this Court does not construe such retained jurisdiction as exclusive. Accordingly, the Internal Revenue Service, to the extent it has not received the payments promised by the plan, and consistent with the plan requirement that payments received be applied first to the tax due then to interest, may enforce payment of the restructured liability through its own administrative processes.

For the foregoing reasons, an order will be entered (1) determining that the Internal Revenue Service is entitled to post-confirmation interest on its allowed priority claim and (2) denying the motion to dismiss.

---

10. Debtor's counsel represented, and the United States did not deny, that he had advised the Internal Revenue Service more than two years

ago of the debtor's position that the plan did not require payment of post-confirmation interest.