**In re NVF COMPANY, Debtor.**

**No. 93–1020(PJW).**

United States Bankruptcy Court,
D. Delaware.

April 21, 2004.

Kathleen P. Makowski, Wendy R. Danner, Saul Ewing LLP, Wilmington, DE, for Defendant New Castle County.

Robert W. Whetzel, John H. Knight, Paul N. Heath, Richards, Layton & Finger, P.A., Wilmington, DE, for Debtor NVF Company.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion to compel payment (Doc. # 1396)[1] filed by New Castle County (the "County"). The County is seeking payment from the debtor, NVF Company ("NVF"), pursuant to a plan of reorganization which was confirmed by this Court on April 25, 1996. For the reasons discussed below, the Court will grant the County's motion, but with an interest calculation different from that requested by the County.

## BACKGROUND

The issue before me concerns sewer user fees owed to the County by NVF. The lengthy history of the dispute is summarized as follows:

(1) For the period from October 1991 until March 1993 NVF failed to pay the County $1,021,456.67 in sewer user fees.

(2) The County filed a monition action on March 16, 1993 in the Superior Court of the State of Delaware to recover the past due amounts plus costs. In response, NVF filed an affidavit of defense on April 14, 1993.

(3) On August 27, 1993, three creditors of NVF filed an involuntary bankruptcy petition in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* As a result, the monition action pending in Superior Court was stayed.

(4) The County filed its proof of claim in this Court on January 26, 1994 for $1,566,957.80, consisting of principal in the amount of $1,442,243.86 and the pre-petition penalties in the amount of $124,713.94. Leading up to the filing of a plan of reorganization, NVF and the County reached an agreement on the treatment of the County's claim.

(5) On April 25, 1996 the Court confirmed the First Amended Joint Plan of Reorganization by NVF Company and Official Committee of Unsecured Creditors (the "Plan").

(6) The Plan recites the amount of the County's claim and the provision for its payment, with interest. The Plan also provides that by a specified date a setoff claim could be asserted by NVF against the County.

---

1. Citations to the docket in the bankruptcy case, *In re NVF Co.*, Case No. 93–1020, will be to "Doc. # ___." Citations to the docket in the adversary proceeding in this Court, *NVF Co. v. New Castle County*, A–99–9, will be to "Adv. Doc. # ___." Citations to the adversary proceeding before the District Court will be to "Dist. Doc. # ___."

(7) Following an extended period of consensual delays, the County and NVF eventually set January 22, 1999 as the deadline for NVF to assert its setoff claim against the County.

(8) On January 22, 1999, NVF filed what it labeled as an "objection" to the County's claim. It was filed in the form of a complaint. The complaint alleged that the County breached a contract with NVF, whereby the County agreed to maintenance sewer lines constructed by NVF and that such breach entitled NVF to a setoff.[2]

(9) On April 24, 2000 the County filed a motion for summary judgment requesting that the Court dismiss the breach of contract and setoff claims (first and second counts) alleged in the complaint.

(10) On April 26, 2000, NVF filed a motion to amend its complaint in order to add a third count alleging a 1998 breach of an implied covenant of good faith and fair dealing.

(11) On June 14, 2000 the United States District Court for the District of Delaware (the "District Court") granted NVF's motion to withdraw the reference from this Court and the adversary proceeding was transferred to the District Court.

(12) The District Court granted the motion to amend on October 24, 2000, permitting NVF to add the third count.

(13) The County filed an answer to the amended complaint on August 29, 2001 and on August 30, 2001 the County filed a motion for summary judgment with respect to NVF's newly added claim.

(14) The summary judgment motions were consolidated and on April 11, 2002 (revised April 18, 2002) the District Court granted summary judgment in favor of the County on all three counts. The District Court denied NVF's motion for reargument on May 10, 2002.

(15) NVF appealed the District Court's ruling and on January 21, 2003 the Third Circuit Court of Appeals affirmed that ruling. A petition for rehearing filed by NVF with the Court of Appeals was denied on March 5, 2003.

(16) By a letter dated April 8, 2003, the County demanded payment from NVF. According to the County, at that point NVF owed it $3,644,494.02, with interest accruing at the rate of $1,002.66 per day. NVF refused to make payment under the terms set forth in the County's letter. Subsequently, on April 21, 2003, NVF made a payment to the County in the amount of $12,724.78. NVF advised the County that "[t]his payment is the first of twelve (12) monthly payments from the Reorganized Company of interest at the rate of 8% per annum of the aggregate amount of $1,908,716.40 ($1,813,507.27 plus $95,209.12) as required by the Plan." (Doc. # 1397, Ex. 10.) The $1,908,716.40 is the amount that both parties agree is the correct amount for the County's claim as of May 6, 1996. (Doc. # 1400 at 8.)[3]

(17) The County filed its motion to compel payment in this Court on June 9, 2003. The motion asserts that NVF owed the County $3,764,404.86 as of June 7, 2003, with interest accruing at the rate of 1% per month.

There is no dispute as to the amount of the County's claim against NVF. NVF

2. The subject contract was executed in 1970 and amended in 1987. The alleged breach apparently occurred in 1987.

3. The agreed amount was calculated as follows: (i) principal in the amount of $1,442,243.86, (ii) accrued interest in the amount of $371,263.41, and (iii) interest at the rate of 9% on the aggregate amount of items (i) and (ii) for the period of November 1, 1995 until May 6, 1996, amounting to $95,209.13.

agrees that as of May 6, 1996 it owes the County $1,908,716.40. The dispute turns on the interest rate to be applied to the claim and the starting date for the payments and the interest accrual. The County asserts that the interest accrues from May 6, 1996, the date the Plan became effective. As to the interest rate, the County's position is confusing. In an attachment to its motion, the County sets forth a calculation of the interest obligation based upon 6% for the first month of the delinquency and 1% for each month thereafter. Applying those interest rates to the claim amount, the County comes up with a total obligation of $3,764,404.86 as of June 7, 2003. However, in its April 8, 2003 demand letter sent to counsel for NVF, the County calculated the interest "at the legal rate of interest (5% over the Federal Reserve discount rate) and compounded daily." (Doc. # 1397, Ex. 8 at 3.) Other than a reference in the motion to 9 *Del. C.* § 2210(a), the County does not explain the basis for the assertion of these interest rates. In any event, it is clear that the County has asserted two different obligations based upon the application of two different interest rates. NVF asserts that, pursuant to the Plan terms, the correct rate of interest is 8% per annum and that the starting date for the payments and the interest accrual is March 5, 2003, the date the Court of Appeals denied NVF petition for rehearing.

### DISCUSSION

The Court heard oral argument on September 23, 2003 and requested additional briefing thereafter. At the September 23, 2003 hearing I expressed the view that the Plan terms appeared to be ambiguous and badly drafted but that the County may have slept on its rights and I ordered further briefing on the issue of equitable laches. Having now reviewed in some detail the Plan documents and related pleadings, I conclude that the Plan allowed the County's claim in the amount of $1,908,716.40 and called for a five year payment term, with interest, commencing on May 6, 1996.

 The question of what interest rate should be applied to the $1,908,716.40 obligation is not a difficult one. The County's reliance on the Delaware Code provision or some undisclosed ordinance is misplaced. The interest rate is determined by the terms of the Plan. A confirmed plan "becomes a legally binding agreement" and "a creditor's rights are governed exclusively by the terms of that plan." *In re Montgomery Ward Holding Corp.*, 306 B.R. 489, 494–95 (Bankr.D.Del.2004). *See also In re Pettibone Corp.*, 134 B.R. 349, 351–52 (Bankr.N.D.Ill.1991) ("A plan of reorganization is a contract which binds a debtor and its creditors."); *In re Ernst & R.C.E.*, 45 B.R. 700, 702 (Bankr.D.Minn. 1985)("The plan is essentially a new and binding contract, sanctioned by the Court, between a debtor and his preconfirmation creditors."). The Plan clearly states that the claim will be paid over time with interest accruing at the rate of 8% per annum.

 The remaining dispute, namely, the starting date for payments and interest accrual, turns on certain Plan provisions and in particular the provisions which address the designation and treatment of claims and the County's claim in particular. Preliminarily, I note the following provisions of the Plan which define relevant terms:

"**Consummation Date**" means the Business Day on which all conditions to the consummation of the Plan set forth in Article XI hereof have been satisfied or waived as provided in Article XI hereof.

(Doc. # 882 at 4.)

"**Distribution Date**" shall mean the date of the first Distribution of Cash or securities, which shall be the Consum-

mation Date or as soon as practicable thereafter.

(Doc. # 882 at 6.)

(There is no dispute that by reason of these two definitions the Consummation Date and the Distribution Date are the same and the parties agree that that date is May 6, 1996.)

"**Allowed**", when used with respect to a Claim other than an Administrative Claim, means a Claim (a) either . . . (ii) proof of which has been timely filed . . . and as to which (b) either (x) no objection to the allowance of which has been filed within the periods of limitation . . . or (y) any objection to the allowance of which has been overruled by a Final Order . . . .

(Doc. # 882 at 2.)

"**Disputed Claim**" means, for the purpose of receiving distributions pursuant to the Plan:

\* \* \* \* \* \*

b. a Claim as to which, if a proof of Claim has been Filed . . ., [or] an objection has been timely Filed . . . For the purpose of receiving Distributions pursuant to the Plan, a Claim or Claims asserted in a proof of claim shall be considered a Disputed Claim in its entirety if an objection is timely Filed to any portion of such Claim or Claims.

(Doc. # 882 at 5.)

The central provision of the Plan is Article IV.D. which, in relevant part, reads as follows:

**The New Castle County Claim—Class 5**

*1. Description:* Class 5 consists of the New Castle County Claim in the aggregate Amount of $1,813,507.27 constituting principal in the Amount of $1,442,243.86 and accrued interest in the Amount of $371,263.41. The Class 5 Claim shall also consist of interest on the aggregate Amount due at a rate of 9% per annum from November 1, 1995 until the Consummation Date (the "New Castle Accrued Interest Amount."). The holder of the New Castle County Claim asserts a statutory Lien against all of the Company's real property located in Delaware pursuant to Delaware law.

*2. Treatment:* Under the Purchase Alternative and the Recapitalization Alternative, *commencing on the Distribution Date,* the holder of the New Castle County Claim shall receive twelve monthly payments from the Reorganized Company of interest at the rate of 8% per annum on the aggregate amount of (i) $1,813,507.27 plus (ii) the New Castle Accrued Interest Amount. *Commencing thirteen months after the Distribution Date,* amounts owing on the New Castle County Claim shall be paid monthly with interest at a rate of 8% per annum amortized over a forty-eight month period. The holder of the New Castle County Claim shall retain its statutory Lien, to the extent valid. In the event the Company sells non-essential real property that is subject to New Castle County's asserted Lien, New Castle County agrees that it will release its Lien and allow such property to be sold free and clear. The Reorganized Company shall have the right to pay any balance of the Allowed New Castle [sic] Claim in full at any time on or after the Consummation Date without premium or penalty.

The Company or the Reorganized Company shall also have the right to contest this Claim by setoff, objection or avoidance, so long as it commences or continues such action the earlier of March 30, 1996 or 30 days after the Consummation Date.

(Doc. # 882 at 19–20) (emphasis added).

NVF argues that under the Plan the County's claim was disputed, therefore

was not an allowed claim and that it only became an allowed claim when the appeal process was exhausted in the Court of Appeals on March 5, 2003.

NVF focuses on the last sentence of Article IV.D.2. which preserved its right to assert a setoff objection. The County timely filed a proof of claim. NVF's right to object to the claim was preserved until March 30, 1996. The County consented to a number of extensions of that deadline and a final deadline of January 22, 1999 was set and NVF timely filed its "objection".[4] That objection did not result in a final order until March 5, 2003. Thus, according to NVF, only as of that date did the County have an allowed claim which triggered the five year payment obligation with interest.

At the September 23, 2003 hearing I thought that NVF's interpretation of the Plan had some appeal. However, after a thorough review of the Plan and related documents, I now conclude that a different interpretation of the Plan is plausible and more consistent with the realities of the situation. I find the following factors support the view that the Plan gave the County an allowed claim as of May 6, 1996.

(1) The proper and conventional way to achieve the result argued for by NVF is for a plan to recite that payment shall be made (or commenced) on the later of (1) a specified date (such as the Distribution Date) or (2) when a claim becomes an allowed claim. The Plan does not say that. It does not condition the commencement of payments on an allowance event. The sole condition for the commencement of payments is the "Distribution Date," a date both parties agree was May 6, 1996. In

the disclosure statement with respect to the Plan (the "Disclosure Statement") the discussion of the designation and treatment of the County's claim reads essentially the same as the Plan, with no reference to an allowance event. Furthermore, the disclosure statement summarizes the treatment of the County's claim as follows:

> *Commencing on the Distribution Date,* the holder of the Class 5 Claim shall receive twelve (12) monthly payments of interest at the rate of 8% per annum on the aggregate amount of (i) principal in the amount of $1,813,507.20 plus (ii) interest on this principal amount at the rate of 9% per annum that has accrued from November 1, 1995 to the Distribution Date. *Commencing thirteen (13) months after the Distribution Date,* amounts owing on the Class 5 Claim shall be paid monthly with interest at a rate of 8% per annum amortized over a forty-eight (48) month period. The Class 5 Claimant shall retain its Lien, to the extent valid.

(Doc. # 881 at 5) (emphasis added).

(2) While the last sentence of Article IV.D.2. preserved NVF's right to contest the County's claim, it does not state what effect that contest would have on the payment of the claim. If it was the intent of that provision to allow NVF to cause the County's claim to be deemed a "Disputed Claim", language to that effect could easily have been included in that Article. Alternatively, language to the effect that the contest would delay or nullify the Distribution Date could easily been inserted.

(3) Pursuant to Article IV.D.1., NVF agreed to pay post-petition interest up to the Consummation Date (May 6, 1996).

---

4. I note that while NVF's right to assert a setoff claim was stated to expire "the earlier of March 30, 1996 or 30 days after the Consummation Date," (Doc. # 882 at 20), the Plan was not confirmed until April 25, 1996.

Thus, the earlier March 30, 1996 date had expired. According to NVF, prior to the confirmation date, the parties agreed to an extension of the right. It is my understanding that the County does not dispute that agreement.

The effect of NVF's interpretation of the Plan is that while NVF agreed to pay post-petition interest up to the Consummation Date, it could, by filing its setoff objection, postpone the Distribution Date (May 6, 1996) and thereby avoid the accrual of any interest until there is a final order on its setoff objection. Clearly, the parties had to be aware that the length of time to reach a final order on the setoff could be years. It is inconceivable that the County would have agreed to such an arrangement. The County's claim is secured and its lien has priority over all other liens. *See* 25 *Del. C.* § 2901(a)(3). It is my understanding that the County's lien is on buildings encompassing in excess of 500,-000 square feet located in Yorklyn. I believe it is safe to conclude that the County's secured claim was and is substantially oversecured. Surely therefore the County would not have agreed to an interest accrual hiatus of unknown length.

(4) The pro forma financial statements included as Exhibit C (Doc. # 881, Ex. C) to the Disclosure Statement reflect the intent to NVF to pay off the County claim over a five year period starting on the Consummation Date. The pro forma balance sheets for the period from the Consummation Date up through year four shows the amortization of the County's claim starting out with $1,882,000 and reducing down to $135,000 in the fourth year (Doc. # 881, Ex. C at 3). The pro forma projected statements of income (Doc. # 881, Ex. C at 4) show an interest expense for the County's claim of $113,000 in the first year and reducing down to $73,000 in year four. A note to these financial statements recites the following with respect to the payment of the County claim:

> ***NEW CASTLE COUNTY SECURED NOTE:*** Represents a secured claim related to sewer utility services in the aggregate amount of approximately $1,882,000, consisting of initial principal, pre-petition penalty and accrued interest of approximately $1,442,000, $125,000 and 315,000, respectively. *Pursuant to terms of the Plan, the secured note will receive payments for the first twelve months of the Plan (i) interest only payments at a rate of 8.0% and thereafter shall receive (ii) equal monthly installments consisting of principal and interest until paid in full.* NVF has reserved the right to assert any available setoff.

(Doc. # 881, Ex. C at 5)(emphasis added).

(5) In support of its position, NVF points to the last sentence of the above-quoted "treatment" paragraph in Article IV.D. of the Plan which reads: "The Reorganized Company shall have the right to pay any balance of the Allowed New Castle Claim in full at any time on or after the Consummation Date without premium or penalty." I do not attach much significance to that statement because it has no application to what NVF must do to carry out the terms of the Plan. Allowing early payment of a claim without premium or penalty is a rather mundane provision found in practically every plan of reorganization. Balanced against this statement in the Plan is a statement in the Disclosure Statement that includes the County's claim under the general caption: "Allowed Secured Claims." (Doc. # 881 at 36.)

 Delaware contract law states that ambiguous provisions are construed against the drafter. *See Hudson v. D & V. Mason Contractors, Inc.,* 252 A.2d 166, 168 (Del.Super.1969). Therefore, in this case where the Plan is considered an enforceable contract the interpretation of the ambiguous provisions will be construed against NVF as the Plan proponent. *See also Miller v. United States (In re Miller),* 253 B.R. 455, 459 (Bankr.N.D.Cal.2000)

("The ambiguity in the plan should be resolved against the Debtor because Debtor drafted the plan.").[5]

Finally, I note that in an October 2, 2001 brief filed by NVF in the District Court, NVF unequivocally stated that the County had an allowed claim:

> NVF Company ("NVF") initiated this adversary proceeding against New Castle County (the "County") pursuant to the First Amended Joint Plan of Reorganization of NVF Company (the "Plan") confirmed by the Bankruptcy Court on April 25, 1996. The Plan *allowed* a claim by the County for certain outstanding sewer bills, subject to NVF's right to contest the County's claim by setoff, objection or avoidance.

(Dist. Doc. # 49 at 1) (emphasis added).

■ I agree with NVF that the County is to be faulted for its long delay in seeking appropriate relief in this Court. At the September 23, 2003 hearing, in response to my inquiry of the County's attorney as to why a Plan enforcement motion had not been filed earlier in this Court, counsel responded that the County simply overlooked the Plan documents in seeking collection of the obligation. However, the record clearly shows that the County consistently asserted a right to interest from the Distribution Date. A number of pleadings reflect that the County's asserted amounts increased steadily over time as a result of the accruing interest. For example, the documents reflect the following assertions by the County of the increasing amount of the obligation as a result of the interest accrual:

| | |
|---|---|
| March 12, 1999 | $2,522,447.70 |
| April 24, 2000 | $2,708,286.77 |
| May 11, 2000 | $2,715,888.59 |
| August 30, 2001 | $2,928,292.52 |
| April 8, 2003 | $3,644,494.02 |

The August 30, 2001 figure was even cited in the District Court's opinion on the summary judgment motion. *NVF Co. v. New Castle County*, 276 B.R. 340, 347 (D.Del. 2002). Admittedly, the County's calculation of interest, based on a Delaware statute or some County ordinance, is wrong because of the superseding Plan terms. However, its assertions over time clearly show that it did not abandon its right to receive payment on the claim with interest.

After the Plan confirmation, NVF never really challenged the validity of the County's claim. NVF did not have an objection per se to the County's claim, but rather was seeking to offset that claim against its own claim against the County. In an October 23, 2001 letter from NVF's counsel to the District Court, NVF clearly stated its position: "NVF's claims are purely defensive in nature as they seek a setoff or mitigation of the County's damage claims." (Dist. Doc. # 57 at 1.) The District Court found that NVF's claim was nothing more than a setoff. *NVF Co. v. New Castle County*, 276 B.R. 340, 354 (D.Del.2002). The District Court specifically found that it was not a recoupment. *Id.*

In its latest brief, NVF argues that granting the County's motion at this late date would be prejudicial. First, NVF claims prejudice because of the penalty like interest rates the County charges for late payments on sewer charges. (Doc. # 1412 at 8.) This assertion of prejudice is mooted because the interest obligation is

---

5. At the September 23, 2003 hearing, NVF's counsel asserted that the County "signed off" on the Plan language addressing the treatment of its claim. Of course, that does not make that provision any less ambiguous and it certainly does not negate the import of the other Plan and Disclosure Statement factors cited above in support of my interpretation. In any event, the County's post Confirmation Date assertions of interest accrual is inconsistent with NVF's interpretation of the Plan.

determined by the Plan terms and the penalty rates used by the County have no application here. Second, NVF argues that the County's failure to assert its request earlier foreclosed NVF''s opportunity to make business decisions with respect to the timing of payment or the funding of an escrow. (Doc. # 1412 at 9.) This argument is belied by the fact that the Disclosure Statement exhibits, as discussed above, show that NVF fully anticipated an immediate commencement of the five year payment arrangement. Furthermore, this assertion of prejudice is not supported by any facts.

To allow NVF''s interpretation of the Plan would be to grant NVF a windfall: a patently oversecured claim in an agreed amount, with agreed pre-effective date interest, would effectively be converted into a seven year interest free loan from the County to NVF.

## CONCLUSION

For the reasons set forth above, the County's motion to compel payment will be granted, with 8% per annum interest accrual from the Distribution Date of May 6, 1996. Because NVF has apparently been making payments for about a year now, I believe it is appropriate to convene a conference with counsel to see if we can reach a consensus on the exact form of an order to implement this ruling. Given the County's fault in not properly pursuing this matter, depending on NVF''s financial condition, an appropriate payment schedule may be warranted.